```
IN THE UNITED STATES DISTRICT COURT
  FOR THE WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```
_____

| | |
|---|---|
| **PAMELA ANN OVERTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 16-1244-TMP |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| Defendant. | ) |

_____

## ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____

Before the court is plaintiff Pamela Ann Overton's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381-1385. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 11.) The case was reassigned to the undersigned on March 13, 2017. For the following reasons, the Commissioner's decision is affirmed.

### I.  FINDINGS OF FACT

Overton applied for SSI on February 11, 2013, alleging an onset date of May 14, 2012. (R. 201.) Her claim was denied initially and on reconsideration. (R. 125-29; 132-34.) On December 12, 2015, Overton's representative submitted a brief and amended the onset date to January 14, 2013, the protective filing

date. (R. 292.) At Overton's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 9-33.) In his written decision, the ALJ initially discussed the applicability of a prior ALJ decision. (R. 12.) Overton's previous application for disability benefits was denied by an ALJ on May 14, 2012. (R. 63-80.) That ALJ determined that Overton retained the residual functional capacity ("RFC") to:

> lift twenty pounds occasionally, ten pounds frequently, and stand, walk, or sit about six hours in an eight-hour day, but no more than four hours without a break. Occupational pursuits should be unskilled one or two step simple tasks that do not require kneeling, crouching, crawling, or more than occasional stooping. (20 CFR 404.157(b) and 4.16.967(b)[).]

(R. 69.) Citing Acquiescence Ruling (AR) 98-4(6) and <u>Drummond v. Comm'r of Soc. Sec.</u>, 126 F.3d 837, 842 (6th Cir. 1997), the present ALJ observed that he could "not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, unless new and material evidence and changed circumstances provide a basis for a different finding." (R. 13.)

Turning to the findings of fact and conclusions of law, the ALJ first found that Overton had not engaged in substantial gainful activity since the alleged onset date. (R. 15.) Second, the ALJ determined that Overton had the following severe impairments: bipolar disorder, history of borderline intellectual functioning, history of polysubstance abuse, degenerative disc disease of the

lumbar spine, and chronic lumbar strain. (R. 15.) Third, the ALJ determined that Overton did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16.) The ALJ also determined that Overton retained the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 416.967(c) that is limited to: lifting and carrying up to fifty pounds occasionally and twenty-five pounds frequently; sitting, standing and/or walking up to or about six hours each in an eight hour workday with normal breaks; unlimited pushing and/or pulling; frequent climbing, balancing, stooping, kneeling, and crawling. The claimant can understand, remember, and carry out simple and detailed directions; can maintain concentration and persistence for simple and detailed tasks; can have occasional interaction with the general public, coworkers, and supervisors, but would be better working with things rather than people; and can adapt to infrequent work place changes.

(R. 18.) In making this RFC determination, the ALJ considered Overton's allegations and testimony regarding her mental impairments but noted that her allegations were not well supported by the objective medical evidence and were inconsistent with her admitted daily activities. (R. 19.) Regarding Overton's mental symptoms, the ALJ noted that the majority of her mental health treatment was administered by sources who are not considered "acceptable" under the Social Security regulations, including social workers, nurse practitioners, and counselors. (R. 19.) Even so, the ALJ noted that the objective medical evidence revealed that Overton "progressed from deteriorating mental health and

-3-

improved to stability. In fact, she reportedly participated in her therapy, was actively engaged, and making progress towards her goals." (R. 20.) In addition, she demonstrated "good social and verbal skills, the capability of independently performing activities of daily living, actively engaged in counseling sessions, had the ability to express needs and learn new behaviors, and was amendable to treatment." (R. 20.) Regarding her treatment, Overton admitted that Cymbalta improved her mood and reduced her pain. (R. 20.)

The ALJ discussed Kary Morford, A.P.N.'s mental medical source statement, which she completed on April 8, 2013. (R. 21.) Morford opined that in the past, Overton had demonstrated great difficulty in dealing with the public, coworkers, and supervisors, which suggested marked limitations in the same. The ALJ noted that nurse practitioners are "other sources" whose opinions must be considered, but cannot be given greater weight over well-supported contrary opinions from acceptable medical sources. (R. 21.) The ALJ observed that, contrary to Morford's opinion, the record showed that Overton could work as a cashier, attend social gatherings, go dancing, and visit with friends. (R. 21.) Furthermore, other medically acceptable sources contradicted Morford's opinion. (R. 21.) Specifically, the ALJ discussed William R. Sewell, Ph.D.'s consultative examination, which noted that Overton had no functional limitations in understanding, remembering, sustaining

concentration and persistence, adapting to changes and requirement, and thus had no impairments related to mental limitations. (R. 21.) Psychological consultative examiner Elliot Fitzpatrick, Ph.D., opined that Overton had no limitations in her ability to understand, remember, and adapt to changes and requirements, and had only mild limitations in her ability to sustain concentration and persistence, and ability to interact with the public and coworkers. (R. 22.) State agency consultant Rebecca Joslin, Ed.D., opined that Overton had mild restrictions of activities of daily living and mild difficulties in maintaining social functioning, concentration, persistence, and/or pace, but was not significantly limited in general workplace activities. (R. 23.) The ALJ noted that the evidence viewed in a light most favorable to Overton suggested that she had moderate difficulties in maintaining concentration, persistence, and pace. (R. 23.) Finally, State agency psychological consultant, Horace Edwards, Ph.D., opined that Overton had mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, and/or pace. (R. 23.)

The ALJ also discussed Overton's testimony regarding her alleged physical limitations, including her ongoing knee and back pain, in light of the objective medical evidence. (R. 23.) The record revealed "limited and conservative treatment." (R. 23.) Specifically, during an emergency room visit in 2012, Overton's

straight leg raise tests were negative. (R. 23.) At a subsequent emergency room visit in 2013, Overton did not complain of knee pain, and she exhibited normal leg raise examination in 2014. (R. 24.) At a consultative examination in 2013, Dontia F. Keown, M.D., observed Overton ambulate at a normal pace without any assistive devices, and also reported that Overton presented a full range of motion in her knees and ankles. (R. 24-25.) Dr. Keown made similar findings at a subsequent examination in 2015, and opined that Overton had no restrictions in her ability to do physical work-related activities. (R. 25.) The ALJ finally noted that the objective medical evidence and Overton's own admissions regarding her daily activities undermined her credibility. (R. 25.)

Fourth, the ALJ found that Overton could not perform any past relevant work. (R. 26.) Finally, the ALJ determined that, considering Overton's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which she could perform. (R. 27.) In making this determination, the ALJ utilized a vocational expert ("VE"), who opined that, given the RFC finding, Overton would be able to perform the requirements of representative occupations such as a machine packer, a pack line attendant, and a conveyor feeder offbearer. (R. 27.) Thus, the ALJ found that Overton had not been under a disability since the date her application was filed. (R. 28.) The Social Security Administration's ("SSA") Appeals Council denied Overton's request

for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Overton filed the instant action on September 12, 2016. (ECF No. 1.) Overton first argues that the ALJ did not give proper weight to Morford, her treating source. (ECF No. 13 at 5.) Second, Overton argues that the ALJ erred at Step Two by failing to properly consider all of her impairments, and by failing to provide sufficient reasons for not finding some of her impairments to be severe. (Id. at 10.) Finally, Overton argues that the ALJ erred by failing to include a function-by-function RFC assessment as required by SSR 96-8p. (Id. at 11.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir.

2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th

-9-

Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to

past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.  Whether the ALJ Erred at Step Two**

Overton asserts that the ALJ erred at Step Two because she was diagnosed with disorders in her left knee and left ankle, and the ALJ did not sufficiently state why he did not find these to be severe impairments. (ECF No. 13 at 10.) A severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). "[T]he severity determination is a de minimis hurdle in the disability determination process" meant only to "screen out totally groundless claims." Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) and Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 89 (6th Cir. 1985)) (internal quotation marks omitted). "'[A]n impairment can be considered not severe only if it is a slight

-11-

abnormality that minimally affects work ability regardless of age, education and experience.'" Id. (quoting Higgs, 880 F.2d at 862). When assessing a claimant's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). Because the ALJ is required to consider all of a claimant's impairments (severe and non-severe), "[t]he fact that some of [claimant's] impairments were not deemed to be severe at Step Two is therefore legally irrelevant." Anthony, 266 F. App'x at 457; see also Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 634 (6th Cir. 2016); Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013) (stating that "so long as the ALJ considers all of the individual's impairments, the 'failure to find additional severe impairments . . . does not constitute reversible error.'") (quoting Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007)); Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (holding that the ALJ's failure to classify an impairment as severe was harmless error because other impairments were deemed severe).

To meet her burden, Overton cites to one page in the record, indicating that on July 8, 2012, she appeared at Jackson Madison County General Hospital complaining of pain and swelling in her left knee and left ankle, and stating that she had dislocated the knee twice in the past. (R. 347.) She was prescribed ibuprofen. (Id.) The treatment notes further indicate that while Overton exhibited tenderness of the knee, there was "no appreciable swelling/effusion of the joint," and she exhibited a normal range of motion. (R. 348.) Overton cites to no other evidence in the record to support her claim that she was diagnosed with a disorder in the left knee or ankle. Even if she had been diagnosed with such a disorder, a "mere diagnosis" says "nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); see also Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 713 (6th Cir. 2013). Furthermore, the ALJ noted other severe impairments at Step Two, and went on to consider whether those impairments established a disability. Thus, the fact that some of Overton's impairments were not deemed to be severe at Step Two is legally irrelevant. See Anthony, 266 F. App'x at 457. Accordingly, the ALJ's decision at Step Two was not erroneous and will be affirmed.

**D. Whether the ALJ Gave Proper Weight to Nurse Practitioner Morford's Opinion**

Overton next asserts that the ALJ should have given greater weight to Nurse Practitioner Morford's assessment of her mental and

-13-

social limitations. Overton concedes that Morford is not an "acceptable medical source." (ECF No. 13 at 5.) Rather, she is an "other source." See SSR 06-3P, 2006 WL 2329939, at *2 (Aug. 9, 2006). In weighing opinions from "other sources," ALJs may consider how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. Id. at *4-5. However, "[n]ot every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." Id. at 5; see also Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 550 (6th Cir. 2014) (stating that "other source" opinions are not entitled to any special deference).

The ALJ discussed Morford's opinion and substantial evidence supports his decision to afford it little weight. Notably, the ALJ pointed out that Morford's opinion was not supported by the record as a whole where it conflicted with evidence of Overton's daily activities, work experience and social outings. Contrary to Overton's assertion, the ALJ was not required to give "good reasons" for his assessment in this regard. See Blakely, 581 F.3d

at 406.  The ALJ therefore analyzed Morford's opinion based on the appropriate legal standard, and his decision was supported by substantial evidence.  Overton also asserts briefly that the ALJ erred by not addressing a medical source statement completed by Rodger Chinery, LPC, of Quinco Mental Health, where he indicated multiple marked and extreme limitations.  (ECF No. 13 at 10.)  However, the ALJ discussed other, subsequent treatment notes from Quinco, which indicated that Overton was improving with treatment.  Therefore, at least some evidence in the record as a whole contradicts Chinery's opinion.  Furthermore, remand is not warranted if a claimant has not been prejudiced on the merits or deprived of substantial rights due to an agency's procedural lapse.  See Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 654-55 (6th Cir. 2009).  The ALJ's consideration of the relevant medical opinions was supported by substantial evidence and, accordingly, it will be affirmed.

**E.   Whether the ALJ's RFC Determination Was Supported by Substantial Evidence**

Overton finally asserts that the ALJ should have included a "function-by-function" assessment of her ability to do work-related activities.  (ECF No. 13 at 11.)  In making an RFC determination regarding a claimant's exertional capacity, an ALJ must address seven strength demands, and each function must be considered separately.  SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996).  "Although SSR 96-8p requires a "function-by-function evaluation" to

determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir. 2002); see also Adams v. Comm'r of Soc. Sec., No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) ("SSR 96–8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision."). Here, the ALJ's RFC determination included findings regarding each of the seven strength demands. (R. 18.) Furthermore, the ALJ discussed in detail Overton's treatment history and evidence of physical impairments which could impact the exertional limitations in an RFC assessment. (R. 23-26.) Overton does not point to any explicit limitation or strength demand which should have been discussed in detail, and as explained above, an ALJ is not required to discuss those capacities for which no allegation is alleged. Accordingly, the ALJ applied the correct legal standard in making his RFC determination, which was likewise supported by substantial evidence. Thus, the decision will be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham<br>
TU M. PHAM

```
                                United States Magistrate Judge

                                July 18, 2018
                                Date
```